**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES M. LANIER,<br><br>        Plaintiff,<br><br>   v.<br><br>CLOVIS UNIFIED SCHOOL DISTRICT,<br><br>        Defendant. | 1:11-cv-01613-LJO-GSA<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (Doc. 71) |

## I. INTRODUCTION

Pending before the Court is defendant Clovis Unified School District's ("Clovis Unified") motion for summary judgment. Clovis Unified seeks summary judgment on pro se plaintiff James Lanier's ("Mr. Lanier") race and employment discrimination claims under Title VI and Title VII of the Civil Rights Act of 1964. Mr. Lanier opposes the motion. For the reasons discussed below, this Court GRANTS Clovis Unified's motion for summary judgment. To the extent Mr. Lanier's opposition can be construed as a counter-motion for summary judgment, the motion is DENIED.

## II. BACKGROUND

**A. Facts**

Mr. Lanier is African American. He owns and operates an accredited sports officiating service called Sports Time Officials Association. In May 2010, Mr. Lanier sought to provide sports officiating services to Clovis Unified as an independent contractor. (Doc. 73, ¶ 2, 14). In response to a request for bids from Clovis Unified, he submitted a proposal to provide sports officiating services for the district's athletic programs for the 2010-2011 school year. (Doc. 73, ¶ 1, 2).

1       As part of the bidding process, each bidder was required to complete a questionnaire about its organization. (Doc. 84-1, p. 3). Question five of the questionnaire required the bidder to state the number of officials registered with its organization. (Doc. 84-1, p. 11). The question also required the bidder to provide the names of the certified/credentialed officials registered with its organization, the officials' years of experience, and sports background. (Doc. 84-1, p. 11, 13). Mr. Lanier did not provide this information. (Doc. 73 ¶ 7). Only four of the seven bidders provided this information. (*Id*.).

        After interviewing the top scoring bidders, the selection committee determined that the contract for the 2010-2011 school year should be split between three organizations. (Doc. 73 ¶ 8, 9). Mr. Lanier's organization was not selected. (Doc. 73 ¶ 9). All three of the selected organizations submitted rosters with the names of the officials registered with their organizations as required by question five of the questionnaire. (Doc. 73 ¶ 7, 9). Clovis Unified elected to renew the contract with the three organizations for the 2011-2012 school year. (Doc. 73 ¶ 11). Thus, there was no bidding process for the 2011-2012 contract. (*Id*.).

**B. Procedural History**

        On September 23, 2011, Mr. Lanier filed a complaint in which he alleged a Title VI claim and two state law claims. (Doc. 1). After a screening of Mr. Lanier's pro se complaint, the Court dismissed his state law claims with prejudice and allowed his Title VI claim to proceed. (Doc. 5). Clovis Unified filed a motion to dismiss. (Doc. 13). In response, Mr. Lanier filed a first amended complaint which was not screened by the Court. (Doc. 23). In the first amended complaint, Mr. Lanier re-alleged his Title VI claim of race-based discrimination in the awarding of the sports officiating contracts for the 2010-2011 and 2011-2012 school years, pursuant to 42 U.S.C. § 2000d. (*Id*.). He also added two Title VII claims. (*Id*.). He alleged a disparate treatment/disparate impact discrimination in employment claim, pursuant to 42 U.S.C. § 2000e-2, and a retaliation claim, pursuant to 42 U.S.C. § 2000e-3. (*Id*.).

        Clovis Unified brought a motion to dismiss Mr. Lanier's first amended complaint. (Doc. 25). It challenged the Title VI claim on a number of grounds and the Title VII claims solely on a res judicata theory. (*Id*.). This Court denied Clovis Unified's motion to dismiss in its entirety. (Doc. 32).

Now before the Court is Clovis Unified's motion for summary judgment. (Docs. 71, 72). It argues that it is entitled to summary judgment because Mr. Lanier cannot prevail on his Title VI claim. (*Id.*). It asserts that Mr. Lanier cannot establish a prima facie case of discrimination and that even if he could Clovis Unified had a legitimate, non-discriminatory reason for not awarding him the contract. (*Id.*). Clovis Unified further argues that it is entitled to summary judgment on Mr. Lanier's Title VII claims because Mr. Lanier was never employed by Clovis Unified. (*Id.*).

In Mr. Lanier's opposition, he contends that Clovis Unified's motion for summary judgment on his Title VI claim should be denied because there is a triable issue of material fact as to whether Clovis Unified's proffered reason for not awarding him the contract was a mere pretext for unlawful discrimination. (Doc. 97, p. 14). In the alternative, Mr. Lanier argues that he is entitled to judgment as a matter of law on this claim.[1] (Doc. 96, p. 2:1-2). Mr. Lanier does not challenge Clovis Unified's arguments regarding this Title VII claims. (Doc. 97, p. 19).

The Court found Clovis Unified's motion suitable for a decision without oral argument, pursuant to Local Rule 230(g), and vacated the June 4, 2013, hearing date. (Doc. 93). Having considered the arguments presented[2] and the relevant law, this Court issues this order.

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id*.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[1] Construing Mr. Lanier's claims liberally, as this Court is required to do for a pro se plaintiff, this Court construes this argument as a counter-motion for summary judgment, pursuant to Local Rule 230(e).

[2] Omission of reference to an argument, document, or paper should not be construed as this Court not considering the argument, document, or paper. This Court reviewed, considered, and applied the evidence and matters it deemed admissible, material, and appropriate for summary judgment.

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*. (citing *Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). The nonmoving party must go beyond the allegations set forth in its pleadings. *See* FED. R. CIV. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## IV. DISCUSSION

**A. Title VI Claim**

Clovis Unified contends that it is entitled to summary judgment on Mr. Lanier's Title VI claim because he cannot establish a prima facie case of discrimination. Clovis Unified further argues that even if Mr. Lanier establishes a prima facie case, Clovis Unified had a legitimate non-discriminatory reason for not awarding him the contract.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To state a claim for damages under 42 U.S.C. § 2000d *et seq.*, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). The statute requires proof of discriminatory intent. *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1139 (N.D. Cal. 2000).

Title VI claims are analyzed under the familiar burden shifting framework used in Title VII employment discrimination cases. *See Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011) ("We look to Title VII disparate impact analysis in analyzing Title VI claims."). Under Title VII, a plaintiff alleging disparate treatment must first establish a prima facie case of discrimination by offering evidence that gives rise to an inference of unlawful discrimination. *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009). If the plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action. *Id*. If the defendant meets this burden, plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reason is a "mere pretext for unlawful discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

**1. Prima Facie Case**

A plaintiff may establish a prima facie case by providing direct evidence suggesting that the challenged action was based on an impermissible criterion or by meeting the four-part test laid out in *McDonnell Douglas*.[3] *Boeing Co.*, 577 F.3d at 1049. Mr. Lanier does not set forth direct evidence in support of his claim. Therefore, in order to establish a prima facie case, he must satisfy the *McDonnell Douglas* test. *Id*. The exact *McDonnell Douglas* test does not apply here because it focuses on

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

5

discrimination in the employment context[4] and here the focus is on discrimination during a contract bidding process. Thus, this Court adapts the *McDonnell Douglas* factors to the facts of this case and holds that in order for an independent contractor to establish a prima facie case of discrimination during a contract bidding process, the independent contractor must show that: (i) he belongs to a racial minority; (ii) that he submitted a bid for a contract that he was qualified to fulfill, to an entity seeking bids; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the contract remained open and the entity continued to seek bids from independent contractors of complainant's qualifications. *Cf. McDonnell Douglas Corp.* v. Green, 411 U.S. 792, 802 (1973). "The proof required to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006).

      Mr. Lanier fails to establish a prima facie case of discrimination. As an African American, Mr. Lanier is a member of a racial minority. He submitted a bid for Clovis Unified's sports officiating contract for the 2010-2011 school year, the bid was rejected, and Clovis Unified awarded the contract to three other contractors. Where Mr. Lanier's claim falls apart is that he fails to show that he was qualified to fulfill the contract.

      In May 2010, Clovis Unified sought bid proposals for its sports officiating services contract. (Doc. 84-1, p. 3). As part of the bidding process, bidders were required to fill out a questionnaire about their organization. (Doc. 84-1, p. 11). Mr. Lanier failed to respond to questions two and five of the questionnaire.[5] (Doc. 85-1, p. 4-5). Question five specifically requests the number of officials

---

[4] The elements to prove a prima facie case of discrimination established by *McDonnell Douglas* are:

> (i) that [plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802.

[5] The Court acknowledges that the wording of question two is odd and could be a bit confusing. Questions one and two read as follows:

1. Number of years your business has provided game officials for school district sport programs. ___ (Years)

1  registered with the bidder's organization, their names, certification/credentials, years of experience,
2  and sports background. (Doc. 84-1, p. 11, 13). Mr. Lanier failed to provide this information and
3  instead challenged the legality and legitimacy of the question. (Doc. 85-1, p. 31).

In Mr. Lanier's bid proposal, he argued that with the conclusion of the 2009-2010 school year "there [were] no officials under contract to any officials association" thus, by requiring the information in questions two and five, only the official associations currently under contract could provide the requested information. (*Id*.). In Mr. Lanier's opposition, he reiterates this argument and explains that all of the sports officials came out of a general pool of independent contractors. (Doc. 97, p. 4). Thus, to require the bidders to "claim" various officials was unlawful. (*Id*.). He further argues that Clovis Unified's "request/demand for official rosters . . . work[ed] for the benefit" of the Caucasian owned organizations because Clovis Unified only awarded its contract to Caucasian owned organizations and only organizations with Clovis Unified contracts could adequately respond to question five. (Doc. 97, p. 11).

Mr. Lanier's interpretation of question five is misplaced. Question five allows the selection committee to determine whether the bidder is capable of servicing the contract. The question does not require the officials to be "under contract" with the bidder. Rather, the question is a way of ensuring that the bidder has access to a sufficient number of officials, with the appropriate level of experience, certifications, and sports background to service the contract. The question does not require a contractual relationship or previous experience with Clovis Unified. Thus, by leaving this information blank, the selection committee logically concluded that Mr. Lanier's organization was not qualified to fulfill the contract.

---

2. The number of sports officials your business was hired to officiate. (Indicate # of officials in each sport.)

    Baseball  ____    Basketball ____  Football ____  Soccer ____

    Softball ____    Volleyball ____  Water Polo ____  Wrestling ____

The question could be read as requiring the number of officials previously hired by the bidder to service prior contracts with Clovis Unified, as Mr. Lanier seems to interpret it. It could also be interpreted as requiring the number of officials previously hired by the bidder to service prior contracts with any district. Or it could be interpreted, as Clovis Unified interprets it, as requiring "the number of officials in each sport registered with" the bidder. (Doc. 72, p. 7:24-26). Because question two is ambiguous, the Court will focus its analysis on Mr. Lanier's failure to respond to question five only.

To the extent Mr. Lanier now argues that he had access to the same pool of independent contractors as the Caucasian owned organizations that were awarded the contract, this is not enough to overcome summary judgment because the assertion is unsupported.  To begin with, Mr. Lanier does not point to any evidence to show that the organizations awarded the contract were owned by Caucasians.  In addition, Mr. Lanier does not set forth any information regarding the number of independent contractors he had access to, the sports they officiate, their years of experience, or their credentials.  *See Stefanchik*, 559 F.3d at 929 (the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor").  Accordingly, Mr. Lanier fails to show that he was qualified to fulfill the contract.  As a result, he fails to establish a prima facie case of discrimination.

**2. Legitimate, Non-Discriminatory Justification**

Even if Mr. Lanier had established a prima facie case of discrimination, which he has not, Clovis Unified has articulated a legitimate, non-discriminatory reason for their actions.  *See Boeing Co.*, 577 F.3d at 1049 (if the plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged action).  Clovis Unified states that it did not award Mr. Lanier the contract because he failed to submit a complete bid.  Specifically, it explains that Mr. Lanier's failure to respond to question five prevented the selection committee from determining whether Mr. Lanier was capable of servicing the contract.  The committee had concerns over whether Mr. Lanier had enough qualified officials with the appropriate level of experience to service the contract.

**3. Pretext**

Where the defendant presents legitimate reasons for the challenged action, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reason is a "mere pretext for unlawful discrimination."  *Hawn*, 615 F.3d at 1155.  Evidence to show pretext must be both "specific" and "substantial" in order to overcome the articulated reason for the challenged action.  *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

Mr. Lanier fails to raise a genuine issue of material fact as to pretext.  First, he argues that African American contractors were unable to supply the names, certification, years of experience, and

sports background of the officials registered with their organizations because only Caucasian owned organizations previously serviced Clovis Unified's contract.  (Doc. 97, p. 14-15).  The questionnaire does not require the registered officials to have previously worked for Clovis Unified.  Thus, even if Clovis Unified has only awarded its contract to Caucasian owned organizations in the past; this does not prevent organizations owned by African Americans from supplying the names of officials registered with their organizations.

Next, it appears that Mr. Lanier contends that the Caucasian owned organizations did not have to submit the names, certification, years of experience, and sports background of the officials registered with their organizations because they were given the opportunity to recruit officials after the bidding process whereas Mr. Lanier was not given the same opportunity and was required to provide the information during the bidding process.  (Doc. 97, p. 16).  This contention is belied by the record.  It is undisputed that the contract was split between three organizations all of which submitted a roster of officials with their past experience and qualifications.  (Doc. 73, ¶ 7, 9).

Mr. Lanier also takes issue with the fact that the questionnaire does not specify how many officials must be registered with the organization in order to service the contract.  (Doc. 97, p. 18-19).  The fact the questionnaire does not specify the number of officials Clovis Unified expects its contractor to have registered is irrelevant because Mr. Lanier did not provide the names of any officials.

Finally, Mr. Lanier's argument that he was not awarded the contract based on stereotypes of African Americans (Doc. 97, p. 15-16, 17-18) is unavailing because Mr. Lanier's argument is based on a misinterpretation of the selection committee's reason for requiring the information requested in question five.  The selection committee submitted declarations which provide that the requested information was necessary to determine whether a contractor would be capable of servicing the contract because in the past Clovis Unified had issues with officials not appearing for games, arriving late, and not having the necessary experience or qualifications to officiate effectively.[6]  (Doc. 74 ¶ 16). The selection committee did not attribute these characteristics to Mr. Lanier's organization.  Rather, the statement pertains to prior organizations that serviced the contract and was merely an explanation

---

[6] Mr. Lanier disputes this fact (Doc. 97, p. 6) but fails to set forth any admissible evidence to contract it.

as to why the selection committee wanted to ensure that the bidder had a sufficient number of officials registered with its organization. There is nothing to show that the committee rejected Mr. Lanier's bid based on stereotypes of African Americans. Therefore, Mr. Lanier fails to raise a genuine issue of material fact as to pretext.

Clovis Unified's motion for summary judgment on Mr. Lanier's first cause of action in his first amended complaint is GRANTED. To the extent Mr. Lanier's opposition can be construed as a counter-motion for summary judgment on his first cause of action, the motion is DENIED. Mr. Lanier has failed to show that he is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a).

**B. Title VII Claims**

Clovis Unified contends that it is entitled to summary judgment on Mr. Lanier's Title VII claims because Mr. Lanier was never employed by Clovis Unified.

Title VII forbids an employer from discriminating against its employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Title VII also protects employees from retaliation. 42 U.S.C. § 2000e-3. "Title VII protects employees, but does not protect independent contractors." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). Thus, an individual is "entitled to the protections of Title VII only if she is an employee." *Murray v. Principal Fin. Group, Inc.*, 613 F.3d 943, 944 (9th Cir. 2010). "Determining whether a relationship is one of employment or independent contractual affiliation requires a fact-specific inquiry which depends on the economic realities of the situation." *Adcock*, 166 F.3d at 1292 (internal quotation marks omitted).

Here, it is undisputed that Mr. Lanier was never employed by Clovis Unified. (Doc. 73, ¶ 13). It is further undisputed that at all times relevant to the claims raised in Mr. Lanier's first amended complaint, that he was an independent contractor seeking a contractual relationship with Clovis Unified and not an employment relationship. (Doc. 73, ¶ 14). Thus, Mr. Lanier has failed to show a genuine dispute of material fact with regard to this issue and Clovis Unified is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a).

Clovis Unified's motion for summary judgment on Mr. Lanier's second and third causes of action in his first amended complaint is GRANTED.

**V. CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS defendant Clovis Unified School District's motion for summary judgment;
2. DENIES plaintiff James M. Lanier's counter-motion for summary judgment;
3. DIRECTS the clerk to enter judgment in favor of defendant Clovis Unified School District and against plaintiff James M. Lanier, to close this action; and
4. VACATES the July 24, 2013 pretrial conference and September 4, 2013 trial date.

IT IS SO ORDERED.

Dated:   **June 6, 2013**                              **/s/ Lawrence J. O'Neill**
                                                                            UNITED STATES DISTRICT JUDGE